1
2
3
4
5
6

Nicholas R. Nowicki
AZ Lic. # 029740
McDonough & Nowicki PLLC
7107 East Thomas Rd., Suite 105
Scottsdale, Arizona 85251
Telephone: 612-217-0257
Fax: 651-444-5262
Email: nik@mcnowick.com

7
8

*Attorneys for Plaintiffs,*
*Michelle Ruttle and Gregori Gonzalez*

9
10

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Michelle Ruttle and Gregori Gonzalez, | Case No.: |
| Plaintiffs, | |
| vs. | **COMPLAINT** |
| SunTrust Bank, Knightrider Recovery Companies LLC, and American Lending Solutions Corp., | **JURY TRIAL DEMAND** |
| Defendants. | |

11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

   For their Complaint against the Defendants SunTrust Bank (hereinafter SunTrust),

American Lending Solutions Corp. (hereinafter "ALS"), and Knightrider Recovery

Companies, LLC (hereinafter "Knightrider") (hereinafter, collectively, "Defendants"),

1

Plaintiffs Michelle Ruttle (hereinafter "Ruttle") and Gregori Gonzalez (hereinafter "Gonzalez") (hereinafter, collectively, "Plaintiffs") state and allege as follows based on their personal knowledge and experience, on investigations of counsel, and on information and belief:

## INTRODUCTION

1. This is a lawsuit to recover damages arising under the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.*, the Uniform Commercial Code (UCC) – A.R.S. 47-9101 et seq., and the common law.

## PARTIES

2. Ruttle is a natural person residing in the City of Gilbert, County of Maricopa, State of Arizona.

3. Gonzalez is a natural person residing in the City of Gilbert, County of Maricopa, State of Arizona.

4. SunTrust is a federally chartered banking institution with its principal executive offices in Atlanta, Georgia.

5. Knightrider is a limited liability company organized under the laws of the State of Arizona with its principal executive offices in Mesa, Arizona.

6. American Lending Solutions Corp. is a business corporation organized under the laws of the State of Florida with its principal executive offices in Charlotte, North Carolina.

**JURISDICTION AND VENUE**

7.  Jurisdiction of this Court arises under 28 U.S.C. § 1331, 15 U.S.C. § 1692k, and 28 U.S.C. § 1367.

8.  Venue lies in this District pursuant to 28 U.S.C. § 1391b(2) because Defendants' acts and omissions giving rise to this suit occurred in the District of Arizona.

9.  This Court has personal jurisdiction over SunTrust because, on information and belief, SunTrust engages in consumer lending in Arizona, communicates by mail and phone with Arizona customers in Arizona, and authorizes repossessions in Arizona.

10. This Court has personal jurisdiction over Knightrider because Knightrider is organized in the state of Arizona, maintains its chief executive office in Arizona, and regularly engages in repossessions in Arizona.

11. This Court has personal jurisdiction over ALS because ALS hires and communicates by mail and phone with repossession agents in Arizona and manages the repossession of vehicles in Arizona.

**FACTUAL ALLEGATIONS**

12. Ruttle and Gonzalez are husband and wife.

13. At the time of the conflicts described in this complaint, Ruttle was pregnant with her first child.

3

14. On or about August 25, 2015, Ruttle purchased a 2009 Land Rover Range Rover, VIN SALMF15489A304212 (hereinafter the "Vehicle").

15. Ruttle purchased the Vehicle from a private, non-dealer seller who had listed the Vehicle for sale online.

16. Ruttle purchased the Vehicle for personal and family transportation.

17. The sale was an arms-length transaction; Ruttle did not know the seller.

18. Prior to completing the transaction, Ruttle reviewed the seller's ownership documents and confirmed the Vehicle belonged to the seller and was free from any liens.

19. Beyond the seller's ownership documents, Ruttle was not aware of any unperfected claims against the Vehicle.

20. On or about August 26, 2015, Ruttle applied for and the State of Arizona issued a new certificate of title documenting Ruttle's ownership of the Vehicle free from any liens.

21. On November 14, 2015 Plaintiffs were together at a restaurant with friends and family enjoying a baby shower in anticipation of the upcoming birth of their child.

22. In the middle of the celebration, Plaintiffs looked out the window and observed the Vehicle hooked to a tow truck being driven away.

23. No one ever sued Ruttle or pursued any judicial process whatsoever related to the Vehicle.

24. Prior to seeing it on a tow truck during her baby shower, Ruttle had no notice of any kind that anyone was interested in her Vehicle.

25. At first, Plaintiffs and their guests all believed the Vehicle was being stolen.

26. Gonzalez and a friend got into another vehicle and tried to chase the tow truck.

27. Gonzalez lost the tow truck after several blocks and returned to Ruttle and their family and friends.

28. Plaintiffs called the Gilbert Police Department to report the Vehicle stolen.

29. The Gilbert Police Department informed Plaintiffs that Knightrider had towed the Vehicle as collateral for a loan.

30. The Gilbert Police Department created police report number 15-000019787.

31. Plaintiffs were forced to end their baby shower early.

32. Plaintiffs obtained a ride home from a friend.

33. The Vehicle was Ruttle's sole means of transportation.

34. Ruttle called Knightrider several times to ask for more information about what happened and why.

35. Knightrider refused to provide her with any information.

36. The keys to Plaintiffs' home, their garage door opener, the keys to Gonzalez's vehicle, Ruttle's business files, Ruttle's coat, Ruttle's sunglasses, and other miscellaneous items of personal property were located inside the Vehicle when it was taken by Knightrider.

37. Ruttle requested that she at least be able to pick up essential items from the Vehicle from Knightrider.

38. Knightrider told Ruttle that she would have to call back the following day to make any arrangements.

39. As a result, Plaintiffs were forced to break into their home that night.

40. Ruttle did not sleep because she was overwhelmed with anxiety that Plaintiffs' basic means to security and transportation were in the hands of strangers.

41. Ruttle had stomach pains and bleeding for the first time in her pregnancy.

42. Ruttle called Knightrider back the next day.

43. Knighthrider's representative told Ruttle that she would have to call back when owner of the company was around and that—though it was only 10:00 a.m.—the owner had already left for the day.

44. Knighrider's representative further stated that Plaintiffs would have to pay $175 fee to recover any personal belongings.

45. Knightrider repeatedly told Ruttle that they could not give her any other information because she was not the person named in their paperwork.

46. A simple check with the State of Arizona would have solved Knightrider's doubts—Ruttle was the owner free from any security interests.

47. Knightrider did not take that course, even though confirming the absence of any liens against an Arizona-titled motor vehicle can be accomplished 24 hours a day, 7 days a week online for a nominal fee of $1.50.

48. Knightrider told Ruttle she had to call ALS, who Knightrider explained had instructed them to take possession of the Vehicle.

49. Ruttle did and spoke with an ALS employee named Amber.

50. Ruttle faxed ALS the police report.

51. Ruttle was transferred to an ALS supervisor named Wendy.

52. Like Knightrider, ALS stated that they could not help Ruttle because her name was not on their paperwork.

53. Again, a simple check with the State of Arizona would have solved ALS's doubts.

54. ALS did provide Ruttle with the name of the purported creditor who claimed an interest in her Vehicle and had ordered ALS to take possession—SunTrust.

55. Plaintiffs have never borrowed any money from SunTrust, and likewise they have given SunTrust no interests in their property.

56. Ruttle called SunTrust.

57. SunTrust informed Ruttle that a natural person named Bryon K. Eckert (hereinafter "Eckert") borrowed money from SunTrust and pledged a vehicle with the same VIN as Plaintiff's Vehicle as collateral.

7

58. On information and belief, Eckert borrowed money from SunTrust for personal, family, and household purposes, and at all times that Defendants acted against Plaintiff's Vehicle, they were attempting to recover on Eckert's consumer debt.

59. SunTrust reported to Ruttle that the address they had for Eckert was in Arizona—thus their search for the Vehicle in Arizona.

60. On information and belief, based on investigation subsequent to the conflicts at issue, Eckert's full name is Bryon Kingsley Eckert, and he moved to Maricopa County from Maryland in late 2014.

61. Prior to hearing the name from SunTrust, Plaintiffs had never heard of Eckert. They do not know him in any capacity. He is not the person who sold the Vehicle to Ruttle, and prior to hearing so from SunTrust, Plaintiffs had no knowledge Eckert or SunTrust ever had any claim to the Vehicle.

62. Through SunTrust reported to Ruttle that Eckert had pledged her Vehicle as collateral for his debt and was living in Arizona, SunTrust never acted to perfect a lien against the Vehicle in Arizona.

63. At all relevant times, the Arizona certificate of title to the Vehicle stated that Ruttle was the owner free from any liens.

64. Had SunTrust attempted to review condition of the title to the Vehicle, SunTrust would have learned that Plaintiff was the rightful owner.

65. Still, SunTrust declined to return Plaintiff's Vehicle.

8

66. Ruttle then contacted ALS and told them what she learned from SunTrust.

67. On November 18, 2015, ALS finally authorized Plaintiffs to pick up their keys and other personal items from Knightrider at its lot in Mesa—but not the Vehicle.

68. By this time, Gonzalez was force to miss multiple shifts of work without pay. Knightrider held both the Vehicle and the keys to Gonzalez's vehicle. He thus had no transportation to his job.

69. On arrival on November 18, 2015, Knightrider's agent told Ruttle he needed to have her key to the Vehicle in order to let her onto the lot to recover the keys to Plaintiffs' other vehicle and their home.

70. Ruttle did not wish to hand over her key, but she eventually did after Knightrider told her she would get her key back once the other items were recovered.

71. Plaintiffs further asked Knightrider for the opportunity to search the interior of their Vehicle so as to recover all movable property not accounted for by Knightrider's search, recognizing that Defendants' unlawful detention of the Vehicle had already continued far longer than Plaintiffs hoped and could continue indefinitely.

72. Knightrider refused, and then refused to return Ruttle's key as promised.

73. On information and belief, Knightrider still believed at that moment on November 18, 2015 that it had a present right to possession Vehicle and that it had to dispossess Plaintiff of her key in order to complete its job.

74. A confrontation ensued between Knightrider and Gonzalez.

75. Plaintiffs called the Mesa Police Department.

76. Ultimately, Knightrider allowed Plaintiffs to leave with their other keys and garage door opener, but Knightrider's agent fled the scene with Plaintiff's key to the Vehicle after Plaintiffs called the Mesa police.

77. Ruttle was infuriated and called ALS to advise that Knightrider had had stolen her key to the Vehicle.

78. ALS told Ruttle that they would contact SunTrust.

79. ALS told Ruttle they would inform her how to proceed based on instructions from SunTrust.

80. Ruttle did not hear from anybody at ALS or SunTrust.

81. Ruttle then sent an email to Wendy at ALS.

82. Ruttle sent an email to SunTrust using a general email address she found online.

83. An employee of SunTrust named Cora contacted Ruttle.

84. Ruttle talked to Cora several times to no avail.

85. Plaintiffs could live without the Vehicle no longer. Each had missed work. Ruttle had to move obstetrician appointments and was overcome with worry about her health and the health of her baby. On November 19, 2015, Defendants having steadfastly maintained possession of her Vehicle for five days, Plaintiffs paid out-of-pocket to rent a car.

86. Ruttle further arranged for an attorney intervene and contact SunTrust on her behalf.

87. After seven days, numerous telephonic and written communications, dozens of hours, a live confrontation, another theft, another call to law enforcement, intervention by Plaintiffs' attorney, and much physical, mental, and emotional suffering, SunTrust finally sent an instruction down the line to release Ruttle's Vehicle back to Plaintiffs.  The Vehicle was delivered to Plaintiffs' home on November 21, 2015.

88. Defendants were not entirely finished, though: in order to release the Vehicle, Knightrider told Ruttle she has to release Defendants of any liability for their actions.

89. Ruttle refused.

90. Knightrider called SunTrust.

91. After forty five more minutes of agitation, SunTrust finally released to Ruttle her Vehicle without the grossly inappropriate liability waiver.

92. Plaintiffs now bring this suit to recover damages.

## **TRIAL BY JURY**

93. Plaintiffs are entitled to and hereby demand a trial by jury pursuant to the Seventh Amendment to the U.S. Constitution and Federal Rule of Civil Procedure 38.

11

# CAUSES OF ACTION

## COUNT I.

## VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT

## RUTTLE AGAINST KNIGHTRIDER AND ALS

94. Plaintiffs incorporate by reference all preceding paragraphs as though fully stated herein.

95. Pursuant to 15 U.S.C. § 1692a(6), persons who attempt to enforce consumer debts against collateral on behalf of others are liable for violations of 15 U.S.C. § 1692f(6).

96. The foregoing actions and omissions of Knightrider constituted numerous and multiple violations of 15 U.S.C. § 1692f(6).

97. The foregoing actions and omissions of ALS constituted numerous and multiple violations of 15 U.S.C. § 1692f(6).

98. Ruttle was harmed by Knightrider's and ALS's violations of 15 U.S.C. § 1692f(6) and is entitled to recover damages for lost wages, out-of-pocket expenses, mental and emotional distress; statutory damages; and reasonable attorney's fees and expenses pursuant to 15 U.S.C. § 1692k.

**COUNT II.**

**VIOLATION OF A.R.S. § 47–9609(B)(2)**

**RUTTLE AGAINST ALL DEFENDANTS**

99. Plaintiffs incorporate by reference all preceding paragraphs as though fully stated herein.

100.    Whatever claim SunTrust may have believed it had against the Vehicle, Defendants proceeded in an inherently dangerous manner by surreptitiously taking the Vehicle from the title owner outside a crowded restaurant with no notice whatsoever of its claim.

101.    The manner of taking of Ruttle's Vehicle was in violation of A.R.S. § 47–9609(B)(2).

102.    Ruttle was harmed by Defendants' violations of A.R.S. § 47–9609(B)(2) and is entitled to recover actual damages and statutory damages from Defendants pursuant to A.R.S. § 47–9625.

**COUNT III.**

**COMMON LAW TRESPASS TO CHATTELS–THE VEHICLE**

**RUTTLE AGAINST ALL DEFENDANTS**

103. Plaintiffs incorporate by reference all preceding paragraphs as though fully stated herein.

104.  Defendants intentionally, wrongfully, and maliciously interfered with Ruttle's right to possession of the Vehicle between November 14, 2015 and November 21, 2015.

105.  Ruttle was harmed by Defendants' interference with her right to possession of the Vehicle and suffered damages.

106.  Ruttle is entitled to recover from Defendants damages caused by their willful trespass to her right to the Vehicle and such punitive damages as the jury may allow.

## COUNT IV.

### COMMON LAW TRESPASS TO CHATTELS–OTHER PERSONAL PROPERTY

### PLAINTIFFS AGAINST ALL DEFENDANTS

107. Plaintiffs incorporate by reference all preceding paragraphs as though fully stated herein.

108.  Defendants intentionally and wrongfully interfered with Plaintiffs' rights to possession of their personal property between November 14, 2015 and November 21, 2015, including, but not limited to, Gonzalez's car keys, Plaintiffs' keys to their home, Plaintiffs' garage door opener, Ruttle's business files, Ruttle's coat, Ruttle's sunglasses, and Ruttle's keys to the Vehicle.

109.  Plaintiffs were harmed by Defendants' interference with their rights to possession of their personal property and suffered damages.

14

110. Plaintiffs are entitled to recover from Defendants damages caused by their willful trespass to Plaintiffs' rights to possession of their personal property and such punitive damages as the jury may allow.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs pray that a judgment and order be entered against Defendants as follows:

- For damages caused by Knightrider's and ALS's violations of the FDCPA;
- For statutory damages as provided by the FDCPA;
- For reasonable attorney's fees and expenses as provided by the FDCPA;
- For damages caused by Defendants' violations of A.R.S. § 47–9609;
- For damages caused by Defendants' trespass to Ruttle's right to the Vehicle;
- For such punitive damages as appropriate for Defendants' willful and wanton trespass to Ruttle's right to the Vehicle;
- For damages caused by Defendants' trespass to Plaintiffs' rights to other items of personal property;
- For such punitive damages as appropriate for Defendants' willful and wanton trespass to Plaintiffs' rights to the their personal property; and
- For such other and further relief as may be just and proper.

DATED: February 29, 2016                    **MCDONOUGH & NOWICKI PLLC**


                                             s/Nicholas R. Nowicki

                                             Nicholas R. Nowicki
                                             AZ Lic. # 029740
                                             McDonough & Nowicki PLLC
                                             7107 East Thomas Rd., Suite 105
                                             Scottsdale, AZ 85251
                                             Telephone: 612-217-0257
                                             Fax: 651-444-5262
                                             Email: nik@mcnowick.com

*Attorney for Plaintiffs Michelle Ruttle and Gregori Gonzalez*